UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AUTOMATED SYSTEMS OF TACOMA LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>STERIS CORPORATION,<br><br>                Defendant. | CASE NO. C24-01028JLR<br><br>ORDER |

## I.    INTRODUCTION

Before the court is Defendant Steris Corporation's ("Steris") motion to dismiss Automated Systems of Tacoma LLC's ("Automated Systems") second amended complaint.  (MTD (Dkt. # 33); Reply (Dkt. # 37); *see* 2d Am. Compl. (Dkt. # 32).) Automated Systems opposes the motion.  (Resp. (Dkt. # 35).)  The court has reviewed the parties' submissions, the relevant portions of the record, and the governing law.  The

ORDER - 1

court also heard argument from the parties on October 28, 2025.  (*See* 10/28/25 Min. Entry (Dkt. # 40).)  Being fully advised, the court DENIES Steris's motion to dismiss.

## II.    BACKGROUND

The court sets forth the factual and procedural background of this case below.

**A.    Factual Background**[1]

Automated Systems alleges that Steris is infringing its AST® service mark (the "Mark").  (*See generally* 2d Am. Compl.)  Automated Systems asserts that it has been using the Mark in connection with its services since at least 1966.  (*Id.* ¶ 19.)  It applied to register the Mark on February 16, 2015, and on January 19, 2016, it received U.S. Registration No. 4,888,080[2] in connection with "custom fabrication for others of automated assembly machines for use in the pharmaceutical, life sciences, carbon fiber, hygiene and aerospace industries" and "[e]ngineering services, namely, custom engineering design services for others of automated assembly machines for use in the pharmaceutical, life sciences, carbon fiber, hygiene, and aerospace industries."  (*Id.* ¶ 20; *see* Am. Compl. (Dkt. # 18), Ex. 1 at 2 (AST® service mark registration certificate).)  Automated Systems asserts that it is "currently moving into sterilizing single-use consumables" such as vials, syringes, ampoules, cartridges, bottles, or other containers "to recycle or sell such consumables to its customers under the Mark[.]"  (2d Am. Compl.

---

[1] For the purpose of this motion, the court takes Automated Systems's well-pleaded allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Automated Systems also registered a word and design mark comprising a stylized version of the initials "AST," U.S. Registration No. 5,508,195; and the standard character trademark AST VIEW®, U.S. Registration No. 6,166,771.  Automated Systems, however, only alleges infringement of the AST® Mark.  (*See* Resp. at 13; 2d Am. Compl. ¶ 32.)

¶ 36.) Automated Systems further represents that its "natural evolution" is "to also provide its own sterilization services under the Mark for its customers to provide [a] sterile barrier for [its] customers under the Mark to enable delivery of such device to the consumers of it." (*Id.* ¶ 38.)

Steris, meanwhile, has a business division called "Applied Sterilization Technologies" for which, Automated Systems alleges, Steris uses the acronym "AST," either on its own or in combination with the mark "STERIS" (for example, "STERIS AST"). (*See id.* ¶ 12; *id.*, Ex. 2 (screenshots of Steris's website).) According to Steris's website, "STERIS Applied Sterilization Technologies . . . provides contract sterilization, laboratory testing, and product and packaging services to medical device and pharmaceutical manufacturers." (*Id.*, Ex. 2 at 2.)

Automated Systems alleges that it placed Steris on notice of its trademark rights by email on December 5, 2022, but Steris nevertheless continued to advertise and sell its products and services "under the Mark." (*Id.* ¶¶ 64-65; *see id.*, Ex. 6 (December 5, 2022 email).)

**B.     Procedural Background**

Automated Systems filed its original complaint on July 12, 2024. (Compl. (Dkt. # 1).) It brought claims against Steris for violation of the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW, and Lanham Act claims for unfair competition/false designation of origin, registered service-mark infringement, and counterfeiting. (Compl. ¶¶ 27-51.) Steris moved to dismiss the complaint. (1st MTD (Dkt. # 12).) Rather than respond to the motion, Automated Systems filed an amended

ORDER - 3

complaint in which it added a new claim for cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).  (Am. Compl. (Dkt. # 18) ¶¶ 29-37, 54-63.)  Steris then withdrew its motion to dismiss.  (11/11/24 Notice (Dkt. # 19).)

On November 21, 2024, Steris moved to dismiss Automated Systems's amended complaint.  (2d MTD (Dkt. # 20).)  On March 19, 2025, the court granted the motion and dismissed Automated Systems's amended complaint with leave to amend.  (3/19/25 Order (Dkt. # 31).)

Automated Systems timely filed the operative second amended complaint.  (*See generally* 2d Am. Compl.)  Although Automated Systems re-asserts its claims for violation of the WCPA, false designation of origin, and registered service-mark infringement, it no longer pursues its counterfeiting and cyberpiracy claims.  (*See id.* ¶¶ 94-112.)  Steris filed the instant motion to dismiss on April 16, 2025.  (MTD.)  The motion is now fully briefed and ripe for decision.

### III.  ANALYSIS

Steris asserts that the court must dismiss Automated Systems's claims because Automated Systems has not plausibly alleged a likelihood of confusion as required to state a claim for trademark[3] infringement under the Lanham Act.  (*See generally* MTD. )  Below, the court sets forth the standard of review and then evaluates Steris's motion.

---

[3] Although the Mark is registered as a service mark, both parties refer to the Mark as a trademark in their discussions of the applicable law.  (*See generally* MTD; Resp.)  The court follows the parties' example.

A.   **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). When reviewing the plausibility of a complaint, courts "accept all well-pleaded factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff." *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022) (quoting *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020)). However, the court "'need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Id.* (quoting *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014)).[4]

B.   **Lanham Act Trademark Infringement and Unfair Competition**

To state a claim for trademark infringement or unfair competition under the Lanham Act, Automated Systems must allege "(1) that it has a protectible ownership

---

[4] Screenshots of Steris's website are incorporated by reference, and documents filed with the USPTO are matters of public record and appropriate for judicial notice. (*See* 3/19/25 Order at 7-8 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)).) The court considers these documents only for their existence and content and not for the truth of any disputed facts asserted therein. (*See id.* (citing *Lee*, 250 F.3d at 689-90).)

ORDER - 5

interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1048 (9th Cir. 2025) (quoting *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2732 (2025)); *see* 15 U.S.C. §§ 1114, 1125(a)(1). Here, Steris does not dispute that Automated Systems has plausibly alleged that it has a protectible ownership interest in the Mark. (*See* MTD at 9-10 (arguing only that Automated Systems failed to plausibly allege a likelihood of confusion[5]).) Therefore, the issue before the court is whether Steris's alleged use of the Mark is likely to cause consumer confusion.

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). Courts apply eight factors, known as the *Sleekcraft* factors, when considering whether a defendant's use of a mark is likely to confuse consumers:

> (1) the similarity of the marks; (2) the strength of the Automated Systems's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

---

[5] At oral argument, Steris asserted that it does challenge whether Automated Systems has a protectible ownership interest in the Mark based on the scope of Automated Systems's registration. Although Steris stated that it made that challenge on page 14 of its motion to dismiss, that page discusses the likelihood of expansion factor of the test for likelihood of consumer confusion, rather than the first element of a trademark infringement claim. (*See* MTD at 14.)

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  These factors are "not a rote checklist[;]" rather, they "must be applied in a flexible fashion[.]"  *Rearden*, 683 F.3d at 1209.  "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Fortune Dynamic*, 618 F.3d at 1031 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Ent'mt Corp*. 174 F.3d 1036, 1054 (9th Cir. 1999)); *see also Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) ("Because the factors are 'fluid,' a 'plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them.'") (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)).  "[B]ecause a 'careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record,'" dismissal of trademark disputes at the pleading stage is generally disfavored.  *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1167 (9th Cir. 2025) (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901-02 (9th Cir. 2002)).  As a result, Steris "faces a significant challenge to show that the non-existence of [] a likelihood [of confusion] can be determined as a matter of law at the pleading stage." *Benchmark Cap. Holdings Co., LLC v. Benchmark Co., LLC*, No. C 11-4883 RS, 2012 WL 13041640, at *4 (N.D. Cal. Jan. 3, 2012).

      In its March 19, 2025 dismissal order, the court considered the *Sleekcraft* factors and concluded that Automated Systems had not plausibly alleged that Steris's use of the

ORDER - 7

Mark was likely to cause consumer confusion. (3/19/25 Order at 12-13.) Specifically, the court determined that (1) the first, second, and fifth factors weighed slightly in favor of finding consumer confusion; (2) the third factor weighed against Automated Systems because its failure to make any allegations about the specific goods and services at issue made it "impossible to evaluate the degree of 'proximity or relatedness'" of those goods and services; and (3) Automated Systems failed to make any allegations at all regarding factors four, six, seven, and eight. (*Id.*) Automated Systems addresses the *Sleekcraft* factors in much more detail in the operative complaint than it did in its amended complaint. (*Compare* 2d Am. Compl.; *with* Am. Compl.) The court considers the *Sleekcraft* factors below.

1. The Similarity of the Marks

When assessing the similarity of the marks, courts "rely on three general principles." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1164 (9th Cir. 2021) "First, similarity is best adjudged by appearance, sound, and meaning." *Id.* (citation omitted, cleaned up). "Second, the marks must be considered in their entirety and as they appear in the marketplace." *Id.* (citation omitted, cleaned up). "Third, similarities are weighed more heavily than differences." *Id*. (citation omitted, cleaned up). The greater the similarity between the marks, the greater the likelihood of confusion. *Id.*

Here, Automated Systems asserts that its AST® Mark and the acronym "AST" are similar because both use "AST" in connection with goods and services related to sterilizing, testing, and packaging drugs and "AST" appears in a standard, unstylized typeface on both parties' websites in connection with images relating to science and

similar shades of white and light blue.  (2d Am. Compl. ¶¶ 10-14, 18; *id.*, Exs. 1 & 2 (screenshots of the parties' websites).)  The court concludes that Automated Systems has plausibly alleged that the parties' marks are similar.

Steris protests that the marks are dissimilar because Steris only uses the initials "AST" in association with its house mark, "STERIS."  (MTD at 6, 15-16; *see* 2d Am. Compl., Ex. 2.)  Automated Systems, however, raises a claim for reverse confusion, which "occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one."  *Ironhawk Techs.*, 2 F.4th at 1160 (quoting *Surfvivor Media*, 406 F.3d at 630); (*see* 2d Am. Compl. ¶ 69 (alleging that Automated Systems "is injured by reverse confusion")).  Although "a company's consistent use of a house mark can reduce the likelihood of confusion, in a reverse confusion case the junior user's use of a house mark can also aggravate confusion by reinforcing the association between the mark and the junior user."  *Ironhawk Techs.*, 2 F.4th at 1160 (citations omitted).  Therefore, even if Steris, as the junior user, always prefaces "AST" with its house mark STERIS, Steris has not shown that the parties' marks are dissimilar as a matter of law.

      2.      The Strength of Automated Systems's Mark

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) (citation omitted).  Conceptual strength is classified along a five-category continuum of increasing inherent distinctiveness, from generic, to descriptive, suggestive, arbitrary, and fanciful.  *Fortune Dynamic*, 618 F.3d at

1032-33. Commercial strength is based on actual marketplace recognition. *Brookfield Commc'ns*, 174 F.3d at 1058.

A mark is suggestive—and thus relatively strong—"if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1198 (9th Cir. 2009) (citation omitted). By contrast, a mark is descriptive—and thus less strong—if it "define[s] a particular characteristic of the product in a way that does not require any exercise of the imagination." *Id.* (citation omitted). "Arrangements of letters [such as an acronym] have often been given a comparatively wide scope of protection as relatively strong marks . . . based on the assumption that it is more difficult for buyers to remember a series of letters than marks consisting of recognizable words." 1 McCarthy on Trademarks and Unfair Competition § 7:10 (5th ed.); *see, e.g.*, *YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1200 (C.D. Cal. 2002) (finding that the "YKK" trademark for zippers was "extremely strong" because it was "an arbitrary arrangement of letters that serve[d] no purpose other than to identify YKK and the source of its products"), *abrogation on other grounds recognized in DenimXworks Inc. v. J.L.J., Inc.*, No. CV 09-07207 SJO (RZx), 2010 WL 11596164, at *3 n.3 (C.D. Cal. 2010). Here, Automated Systems's Mark consists of a series of letters rather than recognizable words. Accordingly, the court concludes that Automated Systems has plausibly alleged that its Mark is strong.

   3. <u>Proximity or Relatedness of the Goods or Services</u>

"The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and

function." *Network Automation*, 638 F.3d at 1150.  The plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness [of the goods] factor." *Rearden*, 683 F.3d at 1212.  "Related goods are those 'products which would be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 800 (N.D. Cal. 2024) (quoting *Sleekcraft*, 599 F.2d at 348 n.10).

Steris argues that Automated Systems has not plausibly alleged that the goods and services offered by Automated Systems are related to one another.  (*See* MTD at 12-14.)  At this stage of the litigation, however, the court disagrees.  According to Steris's website, "STERIS Applied Sterilization Technologies . . . provides contract sterilization, laboratory testing, and product and packaging services to medical device and pharmaceutical manufacturers." (2d Am. Compl., Ex. 2 at 2.)  Automated Systems, meanwhile, alleges that both it and Steris provide "aseptic processing" or "fill-finish manufacturing" services to drug companies "under the Mark" and that the parties' goods and services "meet in the market throughout the pharmaceutical industry but especially as part of drug companies' aseptic processing." (*Id.* ¶¶ 7-8, 42.)  For example, according to Automated Systems, "drug companies who purchase goods and services from [Automated Systems] under the Mark to manufacture their drug products also purchase goods or services from [] Steris under the Mark to enable finalizing the packaging of their drug products initiated using [Automated Systems's] goods sold under the Mark." (*Id.* ¶ 47; *see also id.* ¶ 48 (alleging that after one of Automated Systems's customers fills a drug-containing device using Automated Systems's goods, Steris then provides a sterile

barrier for the device to facilitate the delivery of the products to consumers).) Thus, according to Automated Systems, "the goods or services offered by [] Steris under the Mark are the same or at least closely related goods or services to those offered by [Automated Systems] under the Mark[.]" (*Id.* ¶ 53.) The court concludes that these allegations, viewed in the light most favorable to Automated Systems, are sufficient to establish that it is plausible that Steris offers goods and/or services that are proximate or related to Automated Systems's goods and/or services.

        4.     <u>Marketing Channels Used</u>

"In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130. It is not enough to show that both businesses advertise on the internet. *Network Automation*, 638 F.3d at 1151; *see also Playboy Enters. Inc. v. Netscape Commc'ns. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) (observing that the marketing channels factor "merits little weight" where the parties advertise on the internet).

Automated Systems alleges that the parties both advertise on the same marketing channels, including the internet, at trade shows, on social media, in brochures, and through various publications. (2d Am. Compl. ¶¶ 70-77.) It points to examples where both Automated Systems and Steris appeared at the same trade show and pharmaceutical conference in 2025. (*Id.* ¶¶ 67-68.) The court concludes that these allegations sufficiently establish that it is plausible that Automated Systems and Steris advertise using the same marketing channels.

### 5. The Degree of Care Exercised by Purchasers

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media*, 406 F.3d at 634 (citation omitted). Consumers with higher levels of expertise are expected to exercise greater care. *Sleekcraft*, 599 F.2d at 353. Consumers are also likely to exercise greater care when making expensive purchases. *Playboy Enters.*, 354 F.3d at 1028. However, "[l]ow consumer care . . . increases the likelihood of confusion." *Id.*

Automated Systems alleges that its customers are individuals who have "little or no experience in the industry" who "often have low wages" and who "do not understand what they are buying." (2d Am Compl. ¶ 89.) As Steris points out, however, these allegations directly contradict the sworn representations Automated Systems made to the USPTO during its trademark application process. (*See* 11/21/24 Rava Decl. (Dkt. # 21) ¶ 4, Ex. C at 5 (Amendment and Response filed before the USPTO, asserting that Automated Systems's customers are "highly sophisticated"); *id.* ¶ 4, Ex. D at 1-2 (declaration of Automated Systems's manager Royce Tourtillott, asserting that Automated Systems's customers "are extremely sophisticated and use a great deal of care" in selecting service providers and that contracts "often run[] into the millions of dollars" and "often take months to negotiate"). Therefore, the court need not accept as true Automated Systems's allegation that its customers have a low degree of expertise or care. *See Produce Pay, Inc.*, 39 F.4th at 1161. The court concludes, therefore, that Automated Systems has not plausibly alleged a low degree of consumer care.

ORDER - 13

      6.     Actual Confusion, Defendant's Intent, and Likelihood of Expansion

The Ninth Circuit has "repeatedly held that the remaining three factors –'evidence of actual confusion,' 'defendant's intent in selecting the mark,' and 'likelihood of expansion of the product lines'—are not necessary to find a likelihood of confusion." *Trader Joe's*, 150 F.4th at 1053-54 (quoting *Sleekcraft*, 599 F.2d at 348-49). Therefore, the court concludes that it need not consider them in determining whether Automated Systems has plausibly alleged a likelihood of confusion. *See id.* at 1054 (concluding that the district court "properly found" that these factors were neutral where the plaintiff failed to plausibly allege actual confusion, the defendant's intent to deceive, or the parties' plans to expand into new markets).

In sum, the court concludes that (1) Automated Systems has plausibly alleged that its AST® Mark and Steris's mark are similar, its Mark is strong, the parties goods and services are proximate and related, and that the parties use similar marketing channels; (2) Automated Systems has not plausibly alleged that its consumers exercise a low degree of care; and (3) the remaining *Sleekcraft* factors need not be considered at this stage of the litigation. Because it is not the court's role to balance the *Sleekcraft* factors on a motion to dismiss, the court denies Steris's motion. *See Good Meat Project*, 716 F. Supp. 3d at 807 (denying motion to dismiss because "[a]nalysis of the *Sleekcraft* factors most typically occurs in the context of a summary judgment motion, or at trial" due to "the intensely factual nature of trademark disputes") (citation omitted).

//

//

### C. WCPA and Unfair Competition

Steris moves to dismiss Automated Systems's WCPA and unfair competition claims because they "rely entirely on trademark infringement as [their] predicate." (MTD at 24; *see* 2d Am. Compl. ¶¶ 94-102 (basing Automated Systems's WCPA and unfair competition claims on Steris's alleged infringement of the AST® Mark).) As discussed above, however, the court concludes that Automated Systems has plausibly alleged a claim for trademark infringement. Therefore, the court denies Steris's motion to dismiss Automated Systems's WCPA and unfair competition claims.

### IV. CONCLUSION

For the foregoing reasons, the court DENIES Steris's motion to dismiss Automated Systems's second amended complaint (Dkt. # 33).

Dated this 30th day of December, 2025.

JAMES L. ROBART
United States District Judge